FILED
2015 Feb-26 PM 03:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| ANGELA L. WEBSTER ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:13-cv-01709-SGC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff, Angela L. Webster, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). After consideration of the record and for the reasons stated below, the court is of the opinion that this action is due to be reversed and remanded to the Commissioner for further proceedings, as set forth herein.

## I. Procedural History

Plaintiff initially filed applications for DIB and SSI benefits on December 29, 2010, alleging a disability onset date of March 18, 2010, due to a back injury, carpal tunnel, depression, high blood pressure, a knee injury, and chronic back pain. (R. 161-165). After the Social Security Administration ("SSA") denied her applications, she requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 14, 2011. (R. 34, 62-66, 77). Following the hearing, the ALJ found that plaintiff had the severe impairments of lumbar spondylosis with sciatica, osteoarthritis, obesity, depression, and anxiety (R. 18) but did not have an impairment or a

combination or impairments listed in, or medically equivalent to, one listed in the Listings of Impairments (R. 19). The ALJ further found that plaintiff was not under a disability at any time through the date of his decision. (R. 25). Plaintiff appealed to the Appeals Council, which "found no reason under [its] rules to review the ALJ's decision" and therefore denied plaintiff's request for review. (R. 1). Thus, the ALJ's decision is the final decision of the Commissioner of Social Security. Plaintiff then filed the appeal in this court on September 13, 2013, seeking remand or reversal of the Commissioner's decision. (Doc. 1; Doc. 12 at 10). On February 6, 2015, the parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 15).

## II. Factual Background

At the time of the ALJ's decision, Ms. Webster was thirty-nine years old with an educational background of a GED. (R. 35).[1] Her prior work experience was as a cook, home attendant, and sales person. (R. 38-39, 49). Plaintiff alleges she became disabled March 18, 2010,[2] due to back pain which spreads to her legs. (R. 39-40, 53). She is on oxygen but does not know why her doctor prescribed it.[3] (R. 40-41, 43, 47-48). Plaintiff asserts she also suffers from leg pain, tingling in her feet, and fibromyalgia. (R. 43-44). At one point Plaintiff attempted suicide. (R. 47).

### A. Plaintiff's Medical Records

Plaintiff's medical records in the record begin in March 2008, when plaintiff was seen at an

---

[1] Reference to a record number ("R. ___ "), refers to the page number in the bound physical copy of the transcript of the entire record of the proceedings.

[2] Medical records suggest that plaintiff was in a motor vehicle accident on this date. (R. 305-306).

[3] The only reference to oxygen in the medical records is by Dr. Bruce Hirshman, a pain management specialist. Under "Medications," Dr. Hirshman notes "oxygen 2 liters when needed...." (R. 406).

emergency room for headache, left-sided chest pain with pain radiating down her left arm, shortness of breath, and dizziness. (R. 231). She was diagnosed with Gastroesophageal Reflux Disease ("GERD") and chest pain. (R. 232).

Plaintiff was followed by Dr. Michel Farah, M.D., from November 2008 until August 2010. Upon her first visit, Dr. Farah noted plaintiff had no significant past medical history other than GERD. (R. 291). The list of diagnoses grew to include carpal tunnel syndrome, headache, low back pain, and cervicalgia. (R. 248, 250, 256, 257, 259, 261, 262-263, 264, 269).[4] Plaintiff was seen in November 2008 for complaints of bilateral hand pain and numbness. (R. 288, 289). In December 2008 plaintiff reported dizziness, cramps in her hands and forearms, and continued mid and lower back pain radiating to her left leg. (R. 274, 283). Records from May 2009 reflect she complained of headaches and back and leg pain. (R. 262). In May and June 2009 and February 2010, plaintiff was noted to be in mild distress and tender in her neck, mid back, lumbar spine, and paraspinal area bilaterally. (R. 256, 258, 260, 263). Records from August 2010 reflect plaintiff underwent arthroscopic surgery on her right knee to repair a meniscal tear. (R. 251).

In August 2010 plaintiff was seen for pain management by Dr. S. Aggarwal, M.D., on referral from Dr. Farah.[5] (R. 244-245). Dr. Aggarwal noted plaintiff reported benefit from medication and had "some good days and bad days." (R. 244). He diagnosed her with Chronic Pain Syndrome and noted in her records that she had a narcotics contract as part of the chronic pain

---

[4] Cervicalgia is a diagnosis of neck pain.

[5] The record of plaintiff's initial visit to Dr. Aggarwal miscopied and thus provides no further indication as to why Dr. Aggarwal believed plaintiff suffered from chronic pain syndrome to the extent a narcotics contract was indicated. (*See* R. 244-245).

management program.  (R. 244).

Plaintiff was sent to Dr. Parvesh K. Goel, M.D., for a consultative physical examination in March 2011.  (R. 292).  Dr. Goel considered plaintiff's claims of back pain, carpal tunnel syndrome, depression, and high blood pressure and noted upon examination that plaintiff's grip was "4/5."  Back tenderness over "thoracic L1, L2, L5 and S1 area," with limited leg raise on the left, and limitations of forward flexion of the spine were also documented.  (R. 293).  Although plaintiff had a normal gait, she could not squat and could not walk heel to toe.  (*Id.*).  Dr. Goel diagnosed the plaintiff with lumbar spondylosis with sciatica, carpal tunnel syndrome bilaterally, history of depression and anxiety, osteoarthritis, hypertension, and GERD.  (*Id.*).  Limitations against walking more than one block and standing more than 30 minutes were believed appropriate.  (R. 294).

After plaintiff moved from Alabama to Mississippi, she was followed by Mallory Community Health Center.  Records from December 2010 reflect plaintiff's complaint of constant burning pain in her left knee (R. 379), although an MRI was normal.  (R. 387).  She also had lower back pain, which she described as constant and throbbing.  (R. 380).  Lortab and muscle relaxers helped, while motion made the pain worse.  (R. 380).  In February 2011 plaintiff described her hand, arm, and leg pain as a six or seven on a scale of zero to ten.  (R. 377, 378).  She was referred to a pain clinic.  (R. 377).  The March 2011 record reflects plaintiff considered her pain a five on a scale of zero to ten and that she was denied admission to the pain clinic.[6]  (R. 390).  Plaintiff's treating physician ordered MRIs of her cervical and lumbar spine and referred her to a different doctor for pain management.  (R. 390).  In April 2011 plaintiff went to an

---

[6]  No evidence as to why plaintiff was denied admission appears in the record.

emergency room due to shortness of breath and feeling as if her whole body was cramping.  (R. 336).  She described her arm and leg pain as eight on a scale of zero to ten.  (R. 337).  Plaintiff was diagnosed with myalgias and told to continue taking Lortab.  (R. 342, 350).

Plaintiff then transferred her care to the Lexington Medical Clinic.  (R. 306).  Records from April and May 2011 reflect complaints of neck pain and leg cramps.  (R. 304-305).  Plaintiff's diagnoses included carpal tunnel syndrome, lower back pain, leg cramps, and neck pain.  (R. 304, 305, 308).  The records also reflect diagnoses of osteoarthritis and depressive disorder.  (R. 306, 308).

Plaintiff returned to the emergency room in June 2011 due to back, shoulder, and left arm pain following a motor vehicle accident.  (R. 360-361).  She was diagnosed with a left shoulder sprain and myocervical strain.  (R. 360-362).  A CT of plaintiff's cervical spine found straightening of the lordotic curve and a minimal disk protrusion at C4-C5 with no evidence of significant central canal stenosis.[7]  (R. 365).  A CT of the lumbar spine found disk desiccation changes at L5-S1, a minimal concentric disc bulge at L4-L5, and left subarticular and foraminal disk protrusion at L5-S1, causing moderate left neuroforaminal stenosis and moderate right neuroforaminal stenosis.  (R. 374).

Plaintiff was referred to Dr. Bruce Hirshman, D.O., in July 2011 for pain management.  (R. 406).  Upon examination, Dr. Hirshman noted arthritis, muscle pain, joint swelling or pain, and joint stiffness and found plaintiff to be in moderate distress and walking with an antalgic gait, favoring the right leg with the use of a cane.  (R. 407).  Dr. Hirshman also noted tenderness, limits in range of motion, and pain throughout plaintiff's back and diagnosed her with diffuse

---

[7] The report actually states "significant central canal stenosis," but later medical records reveal this to be a transcription error.  (*See* R. 407).

muscle and joint pain most likely secondary to fibromyalgia. He also noted objective findings of fibromyalgia, sleep apnea, and obesity, as well as a history of panic attacks, depression, and generalized anxiety disorder. (R. 408-09, 488). Dr. Hirshman opined that the use of opioid analgesics was inappropriate given the likely diagnosis of fibromyalgia and plaintiff's history of sleep apnea. (R. 409). He referred plaintiff to Dr. Grigoryev for confirmation of his fibromyalgia diagnosis and encouraged plaintiff to be as active as possible. (R. 409). Finally, in the event Dr. Grigoryev's treatment improved plaintiff's fibromyalgia symptoms, Dr. Hirshman wanted plaintiff to return for further evaluation of her L5-S1 disk pathology. (R. 409).[8]

Plaintiff underwent a psychological evaluation in September 2011 upon presenting to the emergency room with suicidal ideation. (R. 433, 475-476). Diagnoses of adjustment disorder with depressed mood, poor coping skills, and fibromyalgia/chronic back pain were noted in assigning the plaintiff a GAF of 61. (R. 440).

### B. Plaintiff's Testimony

Plaintiff testified she is being treated for high blood pressure and her constant back and leg pain. (R. 43). Plaintiff testified she was diagnosed with fibromyalgia and that Dr. Grigoryev placed her on Ultram rather than Lortab and wanted her to exercise. (R. 44-45). Plaintiff also noted she takes Neurontin but experiences pain and estimated she could walk 30 yards before having to stop due to back pain. (R. 46-47). Plaintiff stated she tries to walk up stairs but gets too tired and her legs feel like they are burning. (R. 48). Sitting for long periods hurts too; plaintiff spends her days lying down, getting up periodically. (R. 48-49).

---

[8] Although plaintiff testified she did see Dr. Grigoryev (R. 44), no medical records are included in the court's record.

### III. Standard of Review

In reviewing claims brought under the Social Security Act, the court "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin*, 894 F.2d at 1529; *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). Conclusions of law are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec.,* 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin*, 894 F.2d at 1529).

### IV. Discussion

#### A. The Five-Step Evaluation

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for a period of disability. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. City of New York*, 476 U.S. 467, 470 (1986). "[A]n individual shall be considered to be disabled for purposes of [determining eligibility for benefits] if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The

specific steps in the evaluation process and the ALJ's findings for each step are noted below.

1. Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If the claimant is engaged in substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Here, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date. (R. 18).

2. Severe Impairments

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The burden is on the claimant to "provide medical evidence showing ... impairment(s)" and their severity during the time the claimant alleges disability. 20 C.F.R. §§ 404.1512(c), 416.912(c). An impairment is "severe" if it "significantly limits [a] claimant's physical or mental ability to do basic work activities."[9] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be

---

[9] Basic work activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers, and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6).

expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. §§ 404.1521(a); 416.921(a).  A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. §§ 404.1523, 416.923.

The ALJ found plaintiff had the severe impairments of lumbar spondylosis with sciatica, osteoarthritis, depression with anxiety, and obesity. (R. 18).  The ALJ further determined that although plaintiff "has been diagnosed with carpal tunnel syndrome, small disc protrusion of the cervical [spine] at C4-5, bilateral knee impingement, sleep apnea, and hypertension, the undersigned finds these impairments cause only slight abnormalities and have such a minimal [e]ffect that they would not be expected to interfere with the claimant's ability to work...." (R. 18).

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the duration requirement and whether it is equivalent to any one of the listed impairments.  20 C.F.R. §§ 404.1520(a)(4)(iii), (d)-(e); 416.920(a)(4)(iii), (d)-(e); 404.1525; 416.925; 404.1526; 416.926.  Listed impairments are so severe they prevent an individual from performing substantial gainful activity.  20 C.F.R. §§ 404.1525(a), 416.925(a); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 (the "Listings"). If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Here, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled any Listing.  (R. 19).

### 4. Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of any Listing, the claimant must prove her impairment prevents her from performing her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), (f); 416.920(a)(4)(iv), (f). At step four, the Commissioner "will first compare [the Commission's] assessment of [the claimant's] residual functional capacity ["RFC"] with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. §§ 404.1560(b), 416.960(b). "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). If the claimant is capable of performing her past relevant work, the Commissioner will find she is not disabled. 20 C.F.R. §§ 404.1560(b)(3); 416.960(b)(3).

Here, the ALJ found that plaintiff had the RFC to:

perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except she cannot climb ladders and can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, crouch, and crawl. She should not work at heights or around hazards. She can perform simple routine repetitive tasks. She can have occasional contact with others.

(R. 19). Considering this RFC, the ALJ determined the plaintiff was unable to perform any of her past relevant work. (R. 24).

### 5. Other Work in the National Economy

If the claimant establishes her inability to perform her past relevant work, the Commissioner must show that the claimant—in light of her RFC, age, education, and work experience—is capable of performing other work that exists in substantial numbers in the national economy. 20 C.F.R. §§ 404.1560(c)(1)-(2); 416.960(c)(1)-(2). If the claimant is not capable of performing other work, the Commissioner must find the claimant is disabled. 20 C.F.R. §§

10

404.1520(g); 416.920(g).

The ALJ consulted a Vocational Expert ("VE") to determine whether any jobs exist in the national economy that plaintiff, considering her RFC and her vocational factors, could perform. The VE testified that an individual with plaintiff's RFC and vocational factors could perform jobs which exist in the national economy in significant numbers such as office helper, checker, and press operator. (R. 50). The ALJ thus determined "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 25).

### B.  Ms. Webster's Claim – Misapplication of the Pain Standard

Plaintiff contends that, although the ALJ correctly cited the pain standard, he misapplied it to the facts of her case. (Doc. 12 at 3). She argues the ALJ's evaluation of her pain was contrary to the evidence in the record. (*Id.* at 7). In this Circuit, to establish disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991)). While the standard requires objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, it does not require objective proof of the pain itself. *Elam v. Railroad Retirement Board*, 921 F.2d 1210, 1215 (11th Cir. 1991).

Thus, under both the first (objectively identifiable condition) and third (reasonably expected to cause the pain alleged) prongs of the standard, a claimant who can show her condition could reasonably be expected to give rise to the pain she alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. *See* 20

C.F.R. §§ 404.1529; 416.929.  "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (citations omitted).  Therefore, if a plaintiff testifies she suffers from pain at a level that would prevent work and she satisfies the three-part pain standard, she must be found disabled unless that testimony is properly discredited.

Here, the ALJ found plaintiff suffers from lumbar spondylosis with sciatica and osteoarthritis, both of which satisfy the pain standard requirement of "an underlying medical condition."  *See Wilson*, 284 F.3d at 1225.  Although the medical records clearly contain a diagnosis of fibromyalgia, the ALJ failed to find it to be either a severe or non-severe limitation.  The ALJ also concluded that plaintiff's carpal tunnel syndrome was a "non-severe limitation."  (R. 18).

The ALJ discounted every one of plaintiff's treating physicians' opinions detailing her chronic pain and their prescription of narcotic pain medication because "objective findings do not support the musculoskeletal problems, diabetes, hypertension, obesity or various other ailments with limitations she alleges."  (R. 23).  However, the evidence in the record includes objective findings to support every one of plaintiff's ailments.  The ALJ labeled the plaintiff's ongoing treatment for bilateral carpal tunnel syndrome, lumbar and cervical spine problems, and left shoulder problems as a "remote history" because she has no more than "conservative medicine therapy."  (R. 23).  The ALJ opined plaintiff's back pain is likely from her obesity but concluded the pain is not as severe as she alleges and is not disabling.  (R. 23).  The ALJ then found his opinion supported by the consultative examination of Dr. Parvesh Goel, except the ALJ believed Dr. Goel's limitations on plaintiff's ability to stand and walk were based solely on plaintiff's

12

subjective complaints. (R. 23). As to the diagnosis of bilateral carpal tunnel syndrome, well documented throughout the record, the ALJ's determination that it was "non-severe," meaning it "is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work," is not supported by substantial medical evidence. *See Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984).

Rather than considering the medical opinions of plaintiff's treating physicians, the ALJ formed his own medical opinions from the testing results found in the record. This is something the ALJ may not do. *See e.g. Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Then, based upon his rejection of the medical evidence, the ALJ determined the plaintiff retained the residual functional capacity to perform a limited range of light work. (R. 19). In doing so, the ALJ gave "significant weight" to the State Agency Functional Assessment reaching the same conclusion. (R. 23). Despite ongoing treatment for back pain, the ALJ discounted the medical records regarding its severity because plaintiff's doctors have proceeded with "conservative medicine therapy" and because the ALJ attributed plaintiff's back pain to her weight. (R. 23). No medical opinion by a doctor who saw plaintiff supports the ALJ's diagnosis. Furthermore, the ALJ does not provide any reason for: (1) ignoring the diagnosis of fibromyalgia; (2) finding that carpal tunnel syndrome is not a severe impairment; (3) ignoring the medical records from treating physicians; or (4) giving the State Agency Functional Assessment "significant weight." (R. 23).

Plaintiff has alleged disabling pain and her allegations are supported by diagnoses of chronic pain, carpal tunnel syndrome, fibromyalgia, spondylosis with sciatica, osteoarthritis, and obesity. MRIs, which are objective medical evidence, support findings of disk desiccation at L5-S1, a minimal concentric disk bulge at L4-5, and a disk protrusion at L5-S1, causing moderate left neural foraminal stenosis and moderate right neural foraminal stenosis. (R. 407). Moreover,

fibromyalgia is a condition characterized by widespread pain in joints, muscles, tendons, and soft tissues. *Heppell-Libsansky v. Commissioner of Social Security*, 170 Fed. App'x. 693, 695 n.1 (11th Cir. 2006).[10]

The ALJ's disregard of all evidence that contradicted his own opinion and his failure to properly consider the plaintiff's pain, as required by the Eleventh Circuit, constitute legal error. Lending credence to the severity of limitations claimed by the plaintiff are multiple years of treatment records for back pain, diagnoses of chronic pain, and doctors' willingness to prescribe narcotic pain medication for plaintiff's back pain. The ALJ's failure to provide valid reasons for ignoring the opinions of plaintiff's treating physicians requires this case to be reversed. Additionally, remand is mandated due to the ALJ's failure to provide reasons for ignoring the diagnosis of fibromyalgia and for finding carpal tunnel syndrome to be less than a severe impairment.

No medical evidence contradicts plaintiff's physicians' conclusions, and none of them opined that plaintiff was malingering. Rather, the record demonstrates plaintiff's treating physicians took her complaints seriously and have resorted to treatment by narcotic pain medication in attempts to alleviate her pain. Accordingly, this case must be remanded to the Commissioner for proper consideration of the medical evidence contained in the record and proper application of the pain standard. Upon remand, the Commissioner shall consider all of the medical evidence in the record, obtain further medical records if necessary, and shall consider whether the objectively documented medical conditions in the record are capable of producing

---

[10] Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. *Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.*" 11th Cir. R. 36-2 (emphasis added).

pain at the level alleged by plaintiff.  A new hearing, with testimony by a VE based on a hypothetical that includes all of plaintiff's medically supported limitations, shall be had if the same would be of assistance to the ALJ in the proper application of the law.

## V. Conclusion

Upon review of the administrative record and considering all of Ms. Webster's arguments, the court finds the Commissioner's decision is not supported by substantial evidence and is not in accord with the applicable law.  Accordingly, the decision of the Commissioner is due to be **REVERSED** and this action **REMANDED** to the Commissioner for further proceedings in accordance with this opinion.

A separate order will be entered.

**DONE** this 26th day of February, 2015.

*Staci G. Cornelius*
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE